UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTIS WIXX,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br>    Defendant. | Case No. C13-2008-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Artis Wixx seeks review of the denial of his application for Disability Insurance Benefits. He contends the ALJ erred by (1) finding no severe mental impairments, (2) finding Mr. Wixx not fully credible, (3) rejecting the testimony of Mr. Wixx's wife, (4) rejecting medical evidence when evaluating Mr. Wixx's residual functional capacity, (5) finding Mr. Wixx could perform his past relevant work, and (6) finding in the alternative that Mr. Wixx could perform other work in the national economy. Dkt. 15. For the reasons discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Mr. Wixx is currently 47 years old, has a high school education, and has worked as an electrician and security guard. Tr. 164, 178, 198. On May 17, 2011, he applied for benefits, alleging disability as of July 19, 2010; his date last insured is June 30, 2016. Tr. 25, 164. His

REPORT AND RECOMMENDATION - 1

application was denied initially and on reconsideration.  Tr. 108, 115.  After conducting a hearing, the ALJ issued a decision on July 25, 2012, finding Mr. Wixx not disabled.  Tr. 23-40.  As the Appeals Council denied Mr. Wixx's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Wixx had not engaged in substantial gainful activity since the alleged onset date; he had the following severe impairments: thoracic outlet syndrome (TOS), small foraminal disc protrusion, mild spondylosis, mild to moderate neural foraminal stenosis of the cervical spine, and residuals from rotator cuff repair of the left shoulder; and these impairments did not meet or equal a listed impairment.[2]  Tr. 25-30.  The ALJ found that Mr. Wixx had the residual functional capacity to perform sedentary work, except that he can stand and/or walk for four hours and sit for four hours in an eight-hour workday; he can never push or pull with the left arm and occasionally push or pull with the right arm; he can never climb ladders, ropes, or scaffolds or crawl; he can frequently climb ramps and stairs, balance, and stoop; he can occasionally kneel or crouch throughout the course of a workday; he can never reach overhead with his non-dominant left arm; and he should avoid even moderate exposure to hazards, such as unprotected heights or machinery.  Tr. 31.  The ALJ found that Mr. Wixx was capable of performing his past relevant work as a security guard and, in the alternative, that he could perform other jobs that exist in significant numbers in the national economy.  Tr. 38-39.  The ALJ therefore concluded that Mr. Wixx was not disabled.  Tr. 40.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

## DISCUSSION

### A. Step two

Mr. Wixx argues that the ALJ erred in finding that he had no severe mental impairments. At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry has been characterized as "a *de minimis* screening device to dispose of groundless claims." *Id.*

The ALJ found that Mr. Wixx had medically determinable mental impairments, which she did not identify, but concluded that they were not severe. Tr. 29. The ALJ found that Mr. Wixx's treating doctors noted at various times that he was alert, oriented, and in no acute distress, with memory and judgment intact. Tr. 29. Mr. Wixx asserts that these doctors made these comments when evaluating his physical condition, not as part of a mental health assessment, and that the ALJ therefore unreasonably interpreted the comments. Dkt. 15 at 5. While an opinion made during a mental health assessment may be more probative of a claimant's mental condition than one made during the course of a physical examination, that fact alone does not mean the ALJ erred by considering the statements as part of her assessment of Mr. Wixx's mental impairments. It is the province of the ALJ to interpret and weigh the evidence. *Thomas*

REPORT AND RECOMMENDATION - 3

1 *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than
2 one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id*.
3 The Court should not disturb the ALJ's consideration of the doctors' comments.

4 The ALJ also found that Mr. Wixx had never sought or received treatment from a mental
5 health specialist, instead receiving all his treatment from a general practitioner, Erik Suh, M.D.
6 Tr. 29. An ALJ may give more weight to a specialist's opinion about medical issues related to
7 his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R.
8 § 404.1527(d)(5). But a primary care physician is qualified to render psychiatric services and
9 give psychiatric opinions. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The fact that
10 a primary care physician is not a mental health specialist is not a reason to reject his opinion
11 about a claimant's mental impairments. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). The
12 mere fact that Mr. Wixx received mental health treatment from a primary care physician instead
13 of a mental health specialist does not preclude Mr. Wixx from passing the "*de minimus* screening
14 device" of step two.

15 Moreover, this finding was factually incorrect. Mr. Wixx testified at the hearing that he
16 had begun seeing a psychiatrist, Sang Suh, M.D.,[3] a week before the hearing, and he was
17 scheduled for a second visit later that month. Tr. 58-59. Dr. Sang Suh had referred Mr. Wixx
18 for a sleep study, to be conducted the day after the hearing. Tr. 71. Mr. Wixx submitted these
19 treatment records, as well as additional records from Dr. Erik Suh, to the Appeals Council. Tr.
20 601-25. Because the Appeals Council considered the evidence in denying review of this case,
21 the new evidence is part of the administrative record, which this Court must consider in
22 determining whether the ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r*

---

[3] Dr. Sang Suh shares a last name with Mr. Wixx's primary care physician, Dr. Erik Suh.

REPORT AND RECOMMENDATION - 4

*of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Considering the new evidence, the ALJ's finding that Mr. Wixx's mental impairments are not severe is not supported by substantial evidence. The new evidence shows that Dr. Sang Suh diagnosed a mood disorder, NOS, and rated Mr. Wixx's Global Assessment of Functioning score between 55 and 60, indicating moderate symptoms or moderate difficulties in social, occupational, or school functioning. Tr. 614-15. Dr. Suh felt that Mr. Wixx's sleep problems were "significantly contributing to his instability," and he wanted to address that issue before starting mood medications. Tr. 615. Over the course of his treatment, Dr. Suh prescribed trials of various medications to address both issues. Tr. 616-19.

The new evidence also includes additional records from Dr. Erik Suh, which document Mr. Wixx's ongoing attempts to find a combination of medications that work to manage his sleep and mental problems, and the results of his sleep study, which resulted in a diagnosis of moderate obstructive sleep apnea, obesity, depression, and rule out periodic limb movement disorder. Tr. 601-12, 62-23.

These records indicate that Mr. Wixx's mental health problems were severe, at least for purposes of a step two determination. The Court concludes that the ALJ's decision cannot be found to be supported by substantial evidence. Accordingly, the matter should be remanded for further proceedings. On remand, the ALJ should consider the new evidence submitted to the Appeals Council, develop the record as necessary, and reassess the nature and severity of Mr. Wixx's mental impairments. The ALJ should then proceed through the remaining steps of the disability evaluation process as necessary. Because the Court recommends remanding for further proceedings, the Court will consider Mr. Wixx's remaining arguments as appropriate.

## B. Mr. Wixx's credibility and lay witness testimony

Mr. Wixx argues that the ALJ erred in finding him not fully credible and in rejecting the lay witness testimony of his wife, Carmen Varnado Wixx. Dkt. 13 at 10, 13.

Because the ALJ did not find that Mr. Wixx was malingering, the ALJ was required to provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ found that Mr. Wixx's subjective reports were inconsistent with his activities of daily living; although his work history shows his good work ethic, it also shows that he preferred to return to his work as an electrician and was unwilling to work in a less demanding job; he did not receive the type or extent of treatment one would expect for an individual alleging total disability; and the objective medical evidence did not support his allegations. Tr. 34-36. All of these may be valid reasons for finding a claimant not fully credible. But in light of the new evidence and the ALJ's error at step two, the ALJ's credibility assessment is not supported by substantial evidence. The ALJ should reevaluate Mr. Wixx's credibility on remand.

The ALJ must take into account lay witness testimony as to a claimant's symptoms, unless the ALJ gives germane reasons specific to the witness for disregarding it. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ discussed Ms. Wixx's testimony in evaluating Mr. Wixx's mental impairments at step two and in evaluating his residual functional capacity. Tr. 29-31. But the ALJ did not articulate a specific, germane reason for rejecting this evidence. The ALJ should reevaluate Ms. Wixx's testimony on remand.

## C. Medical opinions

Mr. Wixx argues that the ALJ erred by rejecting the opinions of Richard Seroussi, M.D., Dr. Erik Suh, Kaj Johnson, M.D., and Elizabeth Spencer-Steffa, OTR/L, CHT, without providing

REPORT AND RECOMMENDATION - 6

adequate reasons. Dkt. 15 at 14-15.  In general, the ALJ should give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor.  *Lester*, 81 F.3d at 830.  Where it is not contradicted by another doctor, the ALJ may reject a treating or examining doctor's opinion only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, the ALJ may not reject a treating or examining doctor's opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

   1. Dr. Seroussi

   In March 2011, Dr. Seroussi evaluated Mr. Wixx and opined that there was evidence of thoracic outlet syndrome, cervicothoracic injury with left worse than right and upper worse than lower, history of left shoulder injury, and left worse than right sided intermittent episodes of orbital pressure and pain, possibly part of posttraumatic headache syndrome.  Tr. 458-61.  The ALJ gave some weight to the opinion, finding that due to the newly diagnosed thoracic outlet syndrome, Dr. Seroussi's opinion no longer fully reflected Mr. Wixx's physical limitations, but his opinion about Mr. Wixx's shoulders remained compelling.  Tr. 37.

   While the ALJ did not incorporate Dr. Seroussi's opinion word-for-word, the ALJ included many of the limitations he opined in her residual functional capacity assessment.  It is

REPORT AND RECOMMENDATION - 7

1  the province of the ALJ, not this Court, to evaluate and interpret the evidence.  *Thomas*, 278 F.3d

2  at 954.  The Court finds no reason to disturb the ALJ's evaluation of Dr. Seroussi's opinion.

3    2.  *Dr. Suh's November 2011 opinion*

4    In November 2011, Dr. Erik Suh opined that Mr. Wixx's symptoms, including pain,

5  numbness, and tingling in his hands and wrists, are "caused by his objective findings and his

6  diagnosis."  Tr. 528.  He opined that as a result, Mr. Wixx is "unable to use his hands reliably

7  and consistently at any work tasks" and has difficulty turning his neck.  *Id.*  Dr. Suh further

8  opined that Mr. Wixx suffers from a nerve disorder that causes his left eye to become bloodshot,

9  twitch, and become painful, and this causes him a loss of focus and concentration.  *Id.*  He

10 concluded that Mr. Wixx "is unable to work at all in any capacity."  *Id.*

11   The ALJ gave little weight to this opinion with regard to Mr. Wixx's neck and hand

12 conditions and associated limitations, finding that the objective medical evidence and assessment

13 reports in the record do not support it.  Tr. 38.  The ALJ found that Dr. Suh relied quite heavily

14 on Mr. Wixx's subjective reports of symptoms and limitations, which the ALJ found unreliable.

15 *Id.*  To merely state that "medical opinions are not supported by sufficient objective

16 findings . . . does not achieve the level of specificity our prior cases have required, even when the

17 objective factors are listed seriatim."  *See Embrey*, 849 F.2d at 421-22.  Moreover, an ALJ does

18 not provide adequate reasons for rejecting an examining physician's opinion by questioning the

19 credibility of the patient's complaints where the doctor does not discredit those complaints and

20 supports his ultimate opinion with his own observations.  *Edlund v. Massanari*, 253 F.3d 1152,

21 1159 (9th Cir. 2001).  The ALJ did not provide adequate reasons for rejecting Dr. Suh's

22 November 2011 opinion and should reevaluate it on remand.

23

REPORT AND RECOMMENDATION - 8

### 3. Dr. Johnson

In March 2012, vascular surgeon Dr. Johnson opined that Mr. Wixx was "virtually disabled" in his left upper extremity. Tr. 551-53. The ALJ gave this opinion little weight, finding that Mr. Wixx appeared to have better effort in his performance during all-day testing with occupational therapist Elizabeth Spencer-Steffa, who opined that Mr. Wixx could still perform at the sedentary level with handling, fingering, and grasping limitations. Tr. 37. An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The inconsistency between Mr. Wixx's performances at the two examinations was a valid reason to give this opinion little weight.

The ALJ also found that Dr. Johnson's opinion was of little value because as it did not quantify what Mr. Wixx is capable of doing, whereas other medical opinions in the record do. Tr. 37. An opinion on an issue reserved to the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," is not a medical opinion and is not entitled to any special significance. 20 C.F.R. § 404.1527(d). The ALJ did not err by failing to give weight to Dr. Johnson's statement that Mr. Wixx is "virtually disabled."

### 4. Ms. Steffa

Occupational therapist Elizabeth Spencer-Steffa conducted an extensive evaluation of Mr. Wixx in April 2012. She opined that Mr. Wixx can work at the sedentary level except he could lift 10 pounds occasionally floor to waist level, 5 pounds to shoulder height, and 3 pounds overhead, and he could perform handling, fingering, or grasping at the frequent to continuous level if self-paced. Tr. 560-73. The ALJ gave this opinion some weight, but did not rely solely on it, as Ms. Steffa is not an acceptable medical source. Tr. 36. The ALJ gave Ms. Steffa's

opinion about Mr. Wixx's exertional limitations significant weight, but found the qualification about self-pacing inconsistent with the medical evidence and without a basis. Tr. 36-37.

The ALJ may evaluate opinions of other medical sources, including occupational therapists, using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p. These factors include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, as well as any other relevant factors. *Id.*; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p. The ALJ must give germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Mr. Wixx argues that the ALJ erred by failing to include any limitations on handling, fingering, and grasping in the residual functional capacity finding. Dkt. 15 at 15. He points to a November 2012 letter Ms. Steffa wrote that was submitted to the Appeals Council, in which Ms. Steffa states: "The need to avoid unnecessary repetition was defined with my recommendation 'self-paced' in the evaluation summary in addition to sedentary work." Tr. 627. Ms. Steffa further stated: "The significance of 'self-paced' is that there are very limited work positions available for self-paced, non-repetitive hand/upper extremity use." *Id.*

The Court finds that the ALJ gave germane reasons for not giving full weight to Ms. Steffa's April 2012 opinion, and her subsequent letter does not mandate a different interpretation. However, on remand, the ALJ may consider what effect, if any, Ms. Steffa's November 2012 letter should have on the assessment of her opinion.

REPORT AND RECOMMENDATION - 10

### D. Steps four and five

Mr. Wixx argues that the ALJ erred at steps four and five by relying on an erroneous residual functional capacity finding and erroneously evaluating the requirements of his past work as a security guard and the other work the vocational expert testified Mr. Wixx could perform. Dkt. 15 at 18-24. In support of his argument, Mr. Wixx relies on a vocational analysis report by John Berg, M.Ed., which Mr. Wixx submitted to the Appeals Council. Tr. 253-58.

Because the Court recommends remanding with directions to reassess the nature and severity of Mr. Wixx's mental impairments at step two, the ALJ will necessarily have to reevaluate Mr. Wixx's residual functional capacity and redo steps four and five, including calling on a vocational expert to provide updated testimony about Mr. Wixx's past work and other work. Mr. Berg's report provides one opinion about Mr. Wixx's functional abilities, which the ALJ may consider. But, given the need to reevaluate Mr. Wixx's residual functional capacity, Mr. Berg's report cannot form the basis of a disability determination. The Court need not further address the errors Mr. Wixx alleges with respect to the expert's testimony below and the ALJ's steps four and five findings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should consider the new evidence submitted to the Appeals Council, develop the record as necessary, and reassess the nature and severity of Mr. Wixx's mental impairments. The ALJ should then proceed through the remaining steps of the disability evaluation process as necessary. The ALJ should reevaluate Mr. Wixx's credibility and the testimony of his wife. And the ALJ should reevaluate Dr. Erik Suh's November 2011 opinion, and the effect, if any,

Ms. Steffa's November 2012 letter has on her April 2012 opinion.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **June 23, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **June 27, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of June, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge
REPORT AND RECOMMENDATION - 12